EbeemáN, J.,
delivered the opinion of the Court.
This bill is filled by complainant against Susan Collier, W. S. Munday, B. C. Parker, administrator, etc., of John Parker, deceased., and George Love, late sheriff of Sumner county, together with several parties, his sureties on Ms official bond.
The bill charges, that Turner, on 11th of March, 1861, - recovered a judgment in the Circuit Court of Sumner County against Susan Collier and John Parker, for $1,019.83, and $11 costs.
That complainant ordered out an execution on this judgment, which was issued on the 3rd of September, 1861, and indorsed by said Love: “satisfied in full, April 14th, 1862,” and by D. H. Hart, Clerk of Circuit Court: “received State Tax and Clerk’s fees, 14th April, 1862.”
It states further, that at what time the said ex- *91 edition was returned to tlie Clerk’s office, complainant does not know, but supposes about the time of said entries.
It is shown by the bill, that at the same term of the court, at which Turner’s judgment, was obtained against Susan Collier and John Parker, Susan Collier recovered a judgment against Eiehard Parker for $860, and that complainant, and "W. S. Munday, the attorney of Susan Collier, made “the following agreement, viz.: that said Collier would pay me (Turner) the difference between the two judgments, and that he would wait for the balance until the same could be collected off of Eiehard Parker;” that in pursuance of said agreement $150.76 was paid to Turner, November 16, 1871, and the same ordered to be credited on the ft. fa. against Susan Collier; and about that time complainant left for the army, and was, never back in Sumner county until May, 1865, when he found the ft. fa. above spoken of.
The bill further states that complainant Turner never received any part of the money on his execution against Susan Collier and John Parker, except the $50.76, and that he does not know how said ft. fa. was satisfied, or in what kind of currency, or what became of the money.
The bill further charges that Susan Collier insists that she has paid off the judgment, and is released from the same; and that Love claims that he had received the amount due on the execution in Confederate money, -“ and has paid it over to *92 tbe Clerk or some one, and is not responsible for tbe same.” It is claimed, tbat tbe execution was functus officio at tbe time of satisfaction, and very questionable whether there was any authority for paying or receiving money on tbe same; but tbat tbe execution being satisfied, be was compelled to come into a court of equity to have satisfaction set aside.
Tbe bill prays for discovery, and asks tbat tbe parties answer this special interrogatory, “ When and where was said money paid, if not on tbe 14th April, 1862, and by whom tbe same was paid, and in what kind of money tbe same was paid, and what has become of tbe money; and tbat they answer fully and particularly in reference to said transaction;” and then asks that the Court will make a decree, deciding who is bound for tbe said money, and for general relief.
Defendants Munday and Susan Collier answer and admit tbe recovery of tbe judgments, and Munday states tbe agreement between himself and Turner to have been, tbat Susan Collier was to pay tbe difference between her judgment against Parker, and tbe judgment of complainant against her; tbat tbe amount of tbat difference up to November 16, 1861, was $150 76, which made tbe two judgments precisely equal; and then Turner was “to wait for tbe collection to be made of Parker.” Both debts bad been stayed under Act of 1861, declared unconstitutional at Jackson.
They say it was agreed, tbat at tbe end of tbe *93 stay, an execution was to be taken out against Parker and Ms surety, and an effort made to make the money, but none to be issued against Susan Collier, until it was clearly ascertained that the money could not be made off of Parker; and if the money could thus be made or collected, complainant was to enter full satisfaction of his judgment against Susan Collier, less the costs, which she was to pay; that Munday left for the army, after the agreement aforesaid, and that Susan Collier, hearing that an execution for the costs alone, was in the hands of the sheriff, sent her son, and paid it. They insist that she is discharged from the judgment; and that both executions were issued at the instance of the complainant; and that Susan Collier had given up the control of the judgment to Turner, and that the sheriff, when the judgment was collected, properly applied the proceeds, under the agreement, to the discharge of the debt due from her to Turner.
They say they know nothing of the kind of money collected or received by the sheriff, or what became of it.
They state, that the receipt of Love, the sheriff, to Parker, showed that the money was collected from Parker in December, 1861; and the reason the execution was not satisfied in full until 14th of April, 1862, was, that the costs had not been paid.
Respondent, Susan Collier, insists that she cannot be prejudiced or affected by the kind of money received by the sheriff as her judgment and execution were subject to the control or complainant, and *94 be was not bound to receive anything but good money on tbe same.
There being no proof taken in the case, we have set out fully the statements of the bill and answer of Munday and Susan Collier, that we may settle first the rights of complainant, as against her. She is called on to answer the bill fully, and specially interrogated as to “ where and when the money was paid, if not on 14th of April, 1862, and by whom the same was paid, and in what kind pf money the judgment was paid, and what has become of it.
In reply to this, she answers distinctly, and states, in substance, that her judgment against Parker was under control of complainant, in pursuance of the agreement stated in her answer, and. that she does not know what kind of money the debt was paid in, nor what became of it.
This answer is in direct response to the interrogatory of complainant; and, as he alleges that his judgment and execution are shown by the entries in the office, to be satisfied, which imports that the money has been paid; and the answer of Susan Collier fails to show any wrongful satisfaction on her part, or any liability remaining against her, complainant must fail of any relief against her, unless there is something in the case to charge her, beyond the statements of her answer.
It is insisted that the answer of defendant Love fixes this liability upon her, by showing the payment to have been made to him of the Parker *95 debt, in Confederate money, and its appropriation to complainant’s judgment against ber, without any special authority to receive this kind of currency from complainant.
The rule on this subject is, “That the answer of one co-defendant is not general evidence against another:” Mitchell v. Nash, Cooke, Cooper’s Ed., top p. 240, 241.
The rule, with its exceptions, is correctly stated by Mr. G-reenleaf: “The answer of one defendant cannot be read against another, generally, there being no issue between them, and therefore no cross-examination; but this rule does not apply to cases where the defendant claims through him whose answer it is proposed to read; nor to cases where they are jointly interested in the transaction in question, as partners, or others identified in interest, or when the respondent refers, in his own answer, to that of his co-defendant for further information, vol. 3, § 283. The reason in favor of the rule is stronger with us, where the co-defendant may, as a matter of course, be examined as a witness, without any previous order for the purpose. See Code, 2890.
It is evident, that the answers of the other defendants, Parker and Love, the former sheriff, cannot be used as evidence against Susan Collier; they have no identity of interest in this case; on the contrary, their interests are antagonistic.
The question then is, as to complainant’s rights against Love, the former sheriff, based on the statements of his answer, and allegations of the bill.
*96 He is called on. to answer as to “when and where said money was paid, if not on the 14th April, 1862; by whom the same was paid; in what kind of money, and what has becomb of the same; and that they answer fully and particularly, in reference to said transaction, as well as to answer the general statements of the bill fully.”
He answers, and states in substance the agreement as to the collection of the debt in favor of Susan Collier, and understanding that it was to be appropriated to payment of balance due from Susan Collier to complainant Turner; that Turner was to wait for the collection of this debt for satisfaction, or, as means of satisfying his own debt; and that in pursuance of said agreement, complainant himself made the calculations, as to the difference between the two judgments, and gave a written order to Love, as sheriff, dated November 16, 1861, to enter the credit of $150.76 on his execution against Susan Collier, which he did, the parties managing the matters themselves; that he- held both executions, the parties agreeing about them, until some time in December, 1861, when Parker applied to settle the one in favor of Mrs. Collier; that he went into the Clerk’s office, where Parker paid the amount of the execution in Confederate money, which in pursuance of the agreement, was then applied in satisfaction of Turner’s judgment against Susan Collier, and both executions are satisfied on the execution docket, except the costs; that afterwards, on the 14th April, 1862, the costs were paid, and at that date the in- *97 dorsement made on tie execution; and that the money thus received was paid over immediately to the Clerk of the Circuit Court, as the law directs. He then says there was a military order from the Confederate authorities requiring all officers to receive Confederate money, a. violation of which would have subjected the party to arrest and imprisonment.
He also insists that complainant is mistaken in his recollection about the matter; his order directing the credit, being dated 16th Hovember, 1861, but a short time before the money was paid by Parker; and he is of the opinion Turner had not left, when Parker paid the money; that he does not know what became of the money after Parker paid it into the Clerk’s office. He insists that “he acted under the agreement of the parties,” and paid the money into the proper office.
Can a decree be rendered against Love, for his action, officially, as sheriff, under the circumstances stated?
It is to be borne in mind, that the bill seeks to charge him for his action as sheriff, and he and his sureties on his official bond are made defendants with this view. It follows, that he must be charged according to the allegation's of the bill. In this view of the case, the fact, that the execution was functus officio, and the deduction sought to be drawn from it, that the sheriff had no authority to collect the money as sheriff, without an execution, would relieve Love and his sureties in this case. The sureties could not be held responsible for his action *98 in a matter not of official duty, or in performance of the duties of his office; and Love would not be chargeable on the allegations of the bill, seeking to hold him responsible in his .character as sheriff, for official default, as he could only be charged as an agent, if at all. The case of Craig v. Graves, 4 J. J. Marshall, 604, is c ited by complainant as an authority, to show that the payment to the sheriff, without an execution in his hands, in full force, cannot be regarded as an official transaction, by which the defendant in the judgment would be exonerated from liability to plaintiff in the judgment. Such is this decision, and we are not disposed to controvert its correctness. Assuming it to' be sound, however, we have seen that it exonerates Love from liability, officially, as sought to be charged, together with his sureties; and the admissions and statements of his answer cannot have, under the rules before referred to, any influence in charging his co-defendants.
Ve know that in September, 1861, and December of that year, Confederate Treasury notes passed currently-in the State of Tennessee. Ve can know this from the fact that by an act of the Legislature passed in that year, to which we refer as part of the history of the country, all Tax Collectors, and other Revenue officers of the State, were directed to receive these notes for State and county taxes, and for other revenue due the State and counties; and the Bank of Tennessee was required to receive said notes from said officers. This necessarily gave them currency.
*99 Ve hold that a sheriff or other public officer, under the circumstances of the country in December, 1861, when this money was paid, in a time of civil war, in the absence of instructions to the contrary, would he justified in receiving on executions in his hands, what was passing current in the country in payment of debts.
The Supreme Court of North Carolina, in two cases decided in 1866, hold this doctrine, and we think that Court held correctly. The Court say: “A sheriff, in the absence of instructions to the contrary, would be justified in receiving what was passing currently in payment of debts of the character which he had to collect. Yet there must, says the Court, be some limit to this discretion of the sheriff; for if he receives funds which are so much depreciated that it would .amount to notice that the plaintiff would not receive them, he would be liable to the plaintiff in the execution.” Atkins v. Mooney, Phillips’ L. R., 32, 33; Emerson v. Mallett, Phillips’ Eq., 236, 237.
His responsibility after he had received the money would depend on the performance of the duties imposed on him by law in such cases. It is insisted that the sheriff could only receive payment of executions in his hands in gold and silver,- or convertible bank paper. The law requiring this of him, must necessarily, in justice and fairness, be construed to apply to, and contemplate the normal state of things existent at the time it was passed, when gold and silver, or convertible bank paper, made up *100 the currency of the country; but cannot b.e held to apply to a time of public war, such as was then upon the country, when gold and silver had ceased to be a currency, and were simply commodities, bought and sold in the market, and when convertible bank paper was a thing unknown.
"We look to the history of the times, and find that the Legislature of Tennessee, then in session, passed a law on 31st of January, 1861,. in which they legalized suspension of specie payments on the part of the banks of the State, till July, 1862. Whether this law was valid or not we do not determine, ■ nor even consider in this opinionbut we know that it truthfully indicates the state of things existent at the time; and from it, as well as the universal and undisputed history of those times, we know that there was no bank paper in circulation convertible in fact, into coin; and of these facts, the complainant must be held to have been cognizant.
To require officers to collect on executions, or in discharge of official duties, in such funds as are insisted on in this case, would be to require an impossibility; and to hold such officer responsible for not doing that, which was then impossible to have been done, in these changed times when the circumstances are so different, would be such injustice as no Court ought to sanction.
Ve need not further discuss these questions.
We may add, however, that we intend in this opinion to confine ourselves to the facts of the *101 case, and decide only upon tlie liability of public officers or agents. As to private agents, wbo voluntarily undertake tbe collection of money, and wbo might accept, or refuse tbe agency, we adhere to tbe decisions heretofore made by this Court, in case of Scruggs v. Luster & Scruggs, 1 Heis., 154, citing 4 Hum., 445; 6 Hum., 62; and other eases.
"We bold that under tbe facts of this case, we can give no decree in favor of tbe complainant ■against any of tbe defendants to this bill. Tbe Circuit Court Clerk, wbo _ seems to have received tbe money on these judgments, may or may not have rendered himself liable for tbe same, or its value when received, or' afterwards, dependent on tbe circumstances of tbe case. That liability, however, would have to be^ascertained by tbe application of- well settled principles to bis conduct as a public officer, charged with duties imposed on him by law, which we need not discuss here, as tbe Clerk is not party to this proceeding.
Tbe Chancellor dismissed tbe bill, and we affirm bis decree, with costs of Court below, and of this Court, to be paid by complainant and bis sureties.